McKEMY et al. v. SUPREME LODGE A. O. U. W.

(Circuit Court of Appeals, Sixth Circuit. July 13, 1910.)

No. 2,025.

1. PARTIES (§ 39*)—INTERVENTION—ACTION AT LAW.

Parties interested in a fund sought to be recovered in an action at law cannot intervene for their own protection; the court in such action having no jurisdiction to distribute the funds among the various beneficiaries entitled thereto.

[Ed. Note.—For other cases, see Parties, Dec. Dig. § 39.*]

2. COURTS (§ 342*)—JURISDICTION—LAW OR EQUITY—FEDERAL COURTS.

The distinction between actions at law and suits in equity in courts of the United States is matter of substance and not of form only.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 912, 913; Dec. Dig. § 342.*]

3. PLEADING (§ 236*)—APPEAL AND ERROR (§ 959*)—AMENDMENT OF PLEADING —DISCRETION OF COURT—REVIEW.

After an order has been made sustaining a demurrer to an original petition, it is within the discretion of the trial court to grant or refuse leave to file an amended petition, the exercise of which discretion will not be interfered with unless plainly abused.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 601; Dec. Dig. § 236;* Appeal and Error, Cent. Dig. §§ 3825-3833; Dec. Dig. § 959.*]

4. EQUITY (§ 267*)—BILL—AMENDMENT.

Equity rule No. 29, relating to amendments, does not entitle the complainant as of right to amend his bill after a demurrer thereto has been sustained.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 267.*]

5. INSURANCE (§ 697*)—MUTUAL BENEFIT INSURANCE—STATE AND SUPREME BODIES—GUARANTY FUND—OBLIGATION OF SUPREME LODGE.

A beneficial association maintained a grand lodge in most of the states and a supreme lodge which was the legislative head of the organization. Each grand lodge which was set off as a separate beneficiary jurisdiction had power to issue benefit certificates, to collect benefit assessments, and to pay claims, except that no more than 12 assessments could be levied in one year. It being found that these, in some instances, were not sufficient to pay the claims against the grand lodge, guaranty fund assessments were levied and remitted to the supreme body. The by-laws of the latter provided that its board of directors from the guaranty fund should extend such relief to the overburdened jurisdiction "as might be right, proper and necessary," and that all relief extended to the several grand lodges for claims allowed by the board of directors of the supreme lodge should be paid from the guaranty fund, and that should the latter be exhausted, and there remain unpaid claims, the board of directors should levy additional assessments to pay the same; the charter of the supreme lodge providing that grand lodges may accept the privileges and benefits of the act of incorporation of the supreme lodge and that the payment of the beneficiary certificates issued by the grand lodge "shall be by the act of such acceptance guaranteed by" the supreme lodge, it "not to be liable primarily on such beneficiary certificates, but only as guarantor or surety." Held, that such guaranty was not absolute nor unconditional, but that the supreme lodge held the fund as trustee, and hence an action at law was not maintainable by the receiver of a state lodge to compel the payment of unpaid benefit claims out of such guaranty fund, though the claims had been allowed by the directors of the supreme lodge.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 697.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. INSURANCE (§ 697*)—MUTUAL BENEFIT INSURANCE—RELATION OF STATE AND SUPREME LODGE—MALFEASANCE.

Where the supreme lodge of a beneficial association maintained a guaranty fund out of which unpaid claims of overburdened state lodges might be paid, allegations that the supreme lodge had power to levy assessments to meet all guaranty fund requirements, and that the assessments fixed each year were understood by the supreme lodge to be adequate to realize a sufficient sum to extend the relief provision of the guaranty fund to the several beneficiary jurisdictions entitled thereto, and that accordingly no additional assessments for said fund would be needed, and none were in fact made, and that the supreme lodge collected or should have collected for the guaranty fund the amount determined to be necessary, and either had or should have had in its possession the amount due and payable to each of the beneficiary jurisdictions on all valid claims, 'and hence was liable to pay the amount of its allowed claims against such fund, did not charge misappropriation, maladministration, or bad faith on the part of the supreme lodge, nor was the allegation inconsistent with an honest exercise of judgment by the supreme lodge in an unsuccessful attempt to raise sufficient funds to meet the benefit certificates issued by plaintiff in connection with those issued by other jurisdictions.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 697.*]

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Action by William D. McKemy, as receiver of the Grand Lodge of the Ancient Order of United Workmen of the State of Ohio, and others, against the Supreme Lodge of the Ancient Order of United Workmen. From a judgment of dismissal, plaintiffs bring error. Affirmed.

P. A. Reece, for plaintiffs in error.

O. A. Berman, for intervening petitioner.

M. F. Galvin and G. W. Winstead, for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SANFORD, District Judge.

KNAPPEN, Circuit Judge. The Grand Lodge of the Ancient Order of United Workmen of the State of Ohio brought suit in the court below to recover the sum of $136,000 and upwards from the Supreme Lodge of that order, which sum was claimed to be owing by the latter to the Grand Lodge on account of beneficiary certificates issued by the Grand Lodge. The original petition alleged: That the Supreme Lodge of the order is a corporation organized under the laws of Texas, a citizen of that state, and engaged in business in all or nearly all of the states of the Union. That under its charter it has authority to adopt and has adopted a constitution, laws, rules, and regulations, with power to amend the same as may be proper and necessary to carry out its objects, which are, among other things, to create funds in aid of its members during sickness or disability, to care for the living and bury the dead, and to pledge the members to the payment of a stipulated sum to the beneficiaries of deceased members. That the laws of the order provide for the setting off of a Grand Lodge as a "separate beneficiary jurisdiction," "with power to collect the beneficiary fund and disburse the same subject to the laws" of the order.

That the plaintiff Grand Lodge was so organized and set apart, and duly constituted as such separate beneficiary jursidiction on August 31, 1872. That the plaintiff Grand Lodge has power to make laws, rules, and regulations for its own government and control, subject to the constitution and laws of the Supreme Lodge. That the rate of assessment is fixed by the Supreme Lodge, under a limitation imposed by the constitution and laws that no more than 12 such assessments may be made in any one year. That in some jurisdictions (including the plaintiff Grand Lodge) the mortality has been so great, from climatic or other causes, as to make the claims against the beneficiary fund greater than the amount which can be realized under the 12 beneficiary fund assessments authorized to be collected by the Grand Lodge as a separate beneficiary jurisdiction. That the laws were accordingly made to provide that:

"To protect the order from exigencies which may arise, increasing its rate to an extent which would make assessments for a time oppressive upon its membership, to maintain a maximum rate to all assessments herein provided (the number thereof not to exceed twelve in any one calendar year), to strengthen and sustain the order to enable it to meet every emergency by giving the assistance of the whole to any part entitled to relief under the laws of the order, a guaranty fund shall be raised and managed and disbursed as herein provided,"

—the provisions set out in the petition being in effect that the Grand Lodge should raise all guaranty fund assessments required and forward the same to the Supreme Lodge treasurer. That the board of directors of the Supreme Lodge "shall from the guaranty fund extend such relief to the overburdened jurisdiction as may be right, proper and necessary." The allegation is further made that under the laws of the order all relief extended to the several grand lodges for claims allowed by the board of directors of the Supreme Lodge shall be paid from the guaranty fund, and that should the latter become exhausted, and there remain unpaid claims, the board of directors "shall levy sufficient additional assessments, at the foregoing schedule of rates, to pay the same." The petition further alleged that the plaintiff Grand Lodge during the period in question collected the maximum of 12 assessments permitted by the laws of the order; that the number of deaths in the jurisdiction was so great during the period stated that the beneficiary fund resulting from those assessments was insufficient to pay death claims in full; that it also promptly collected, accounted for, and paid to the Supreme Lodge all guaranty fund assessments provided by the laws of the order; that plaintiff furnished proofs of deaths as required by the Supreme Lodge, and complied with all the laws, rules, and regulations of the order entitling it to participate in the guaranty fund; that application has been made to the Supreme Lodge for relief from the guaranty fund; that defendant, through its board of directors, passed upon and allowed the claims in question as valid claims against the guaranty fund, and agreed to pay the Grand Lodge the amount of the same out of said fund, but that it has paid thereon only a fraction thereof, leaving a large balance which the Supreme Lodge has failed and refused to pay. By permission of the court, two beneficiaries under certificates

or policies issued by the plaintiff Grand Lodge were permitted to intervene on behalf of themselves and others similarly situated; the specific prayer being:

"That the fund due said plaintiff (the Grand Lodge) be brought into this court and distributed in the proper proportions among all the persons it is found to be due."

The petition was demurred to upon the ground that it "does not state a cause or causes of action against this defendant, upon which this plaintiff can recover." The demurrer was sustained; the court holding that:

"The Supreme Lodge is not the debtor of the subordinate lodges, or of their members, for their share of the guaranty fund, but is their agent and trustee for the disbursement of the fund in accordance with the constitution and laws of the order.

"It is not alleged that there are any, or sufficient moneys in the guaranty fund to pay the claims of the plaintiff, nor is it alleged that the Supreme Lodge or any of its officers have misappropriated the moneys of the fund.

"If there is money in the guaranty fund, it should be disbursed to those entitled to it, and resort should be had to the equity side of the court to compel such disbursements, and, if the fund be insufficient, then to require the board of directors to levy additional assessments 'to pay the same.'"

Meanwhile the receiver of the plaintiff, appointed by an Ohio state court, was substituted as plaintiff. Upon the sustaining of the demurrer to the original petition, the receiver asked leave to file an amended petition; the latter containing several allegations in addition to or in amplification of those in the original petition, the more important of such further allegations being these: That the charter of the Supreme Lodge provides that all Grand Lodges, whether corporate or incorporate, shall have the right to accept the privileges and benefits of its act of incorporation, and that "the payment of the beneficiary certificates of the members of such accepting Grand Lodge outstanding at the time of such acceptance as well as those subsequently issued, shall be by the act of such acceptance guaranteed by this corporation. This corporation shall not be liable primarily on such beneficiary certificates, but only as guarantor or surety." That the Grand Lodge duly accepted the privileges and benefits of the act of incorporation of the Supreme Lodge. That after being so set apart as a beneficiary jurisdiction, the Grand Lodge had power to assess, collect, manage, and disburse to beneficiaries the guaranty fund under its jurisdiction and was "responsible for the claims of the beneficiaries of such members." That the Supreme Lodge, under its charter and through its board of directors, was given the power to create, hold, and disburse the funds and transact all other business named in its charter. That the board of directors of the Supreme Lodge is vested with the general management and control of the entire business matters of the Supreme Lodge, and the exercise of all powers and functions of the Supreme Lodge when the same is not in session. That the constitution and laws of the order further provide that whenever it should be made to appear to the satisfaction of the board of directors of the Supreme Lodge that the number of deaths in any beneficiary jurisdiction is such as to require more than 12 maximum assess-

ments in any calendar year "then relief to an amount equal to such excess shall be extended *as may be determined by the board of directors,* proper application being made therefor, and full investigation by said board being made," the recorder of the Grand Lodge being required, in order to carry into effect the foregoing provision, to forward monthly to the recorder of the Supreme Lodge a list of all death claims against the guaranty fund "as soon as completed, audited and paid," each claim to be accompanied by proofs required by the regulation prescribed by the Supreme Lodge, the recorder of the Supreme Lodge being required to submit to the board of directors of that lodge the applications for relief so received, the laws requiring this board to extend from the guaranty fund *"such relief to the overburdened jurisdiction as may be right, proper and necessary as herein provided* to maintain the integrity and preserve the perpetuity of the order, and such relief may be extended at any time *within the discretion of the board of directors."* That the Supreme Lodge determined the number, amount, and time of payment of each assessment to be paid by each member in the Grand Lodge beneficiary jurisdiction. That the guaranty fund assessments so fixed for each year were at the time of being so fixed "agreed and understood by the Supreme Lodge to be adequate to realize a sufficient sum to extend the relief (provision of the guaranty fund) to the several beneficiary jurisdictions entitled thereto," and that accordingly "no additional assessment for said fund would be necessary to be made, and that none in fact were made." That "said defendant collected, or should have collected, from each of said beneficiary jurisdictions, for said guaranty fund, the amount so fixed and determined by it, and at the commencement of this action said defendant had, or should have had, in its possession in cash in said guaranty fund, the amount due and payable to each of said beneficiary jurisdictions upon all valid beneficiary claims in excess of the amount realized by each of said beneficiary jurisdictions" from the beneficiary fund assessments. (The italics used in all the above quotations are ours.) The amended petition further set up the plaintiff's ouster from the exercise of its franchise by the Ohio state court, the appointment, duties, and powers of the receiver, alleging that the action was brought for the benefit of all the creditors of the Grand Lodge, including all the unpaid beneficiaries thereof for claims for death losses; it being alleged that such beneficiaries were numerous and that it was impracticable to bring them all before the court. Leave to file the amended petition was denied; the court holding that plaintiff's only relief was in equity, and the opinion being also expressed that the receiver had no authority under the insurance laws of Ohio to bring suit in the courts. The plaintiff not desiring to plead further, its original petition, as well as the intervening petitions (including one filed after the application for leave to amend the plaintiff's petition), was dismissed.

So far as the rights of the intervening petitioners are concerned, it is to our minds clear that they have no right to complain of the dismissal, either of the original petition or of their own petitions in intervention, or of the refusal of the court to permit the filing of the plaintiff's proposed amended petition. This is a suit at law. We

know of no principle which permits parties interested in a fund sought to be recovered in a suit at law to intervene in such suit for their own protection. If a court of law can administer relief in this case, such relief is limited to the recovery and collection of judgment. A court of law cannot distribute the fund among the various beneficiaries entitled thereto. The writs of summons issued upon the intervening petitions contain this indorsement: "Summons in action for money and equitable relief." This indorsement, in connection with the practice adopted in filing petitions in intervention, suggests that counsel regarded the principal suit as in equity. Whatever practice might be permissible in the state courts, the distinction in the courts of the United States between causes of actions at law and in equity is matter of substance and not of form. Courtney v. Pradt (Sixth Circuit) 160 Fed. 561, 562, 87 C. C. A. 463, and cases there cited. The intervening petitions were, in our judgment, rightly dismissed.

That the court rightly sustained the demurrer to the original petition is, to our minds, plain. The original petition alleged no guaranty on the part of the Supreme Lodge of the certificates issued by the Grand Lodge. The Ancient Order of United Workmen is in substance alleged or conceded to be a fraternal beneficiary society, organized and carried on for the mutual benefit of its members. There is no allegation that it was carried on for profit. The Supreme Lodge is, substantially at least, alleged to be the highest legislative body of the order. There is no allegation that it has any capital, or that, apart from the guaranty and beneficiary funds, it has any source of income except that it receives, as is conceded in argument, certain fees and dues designed to meet the expenses of the governing body. The original petition does not allege the relation of debtor and creditor between the Grand Lodge and the Supreme Lodge, but, on the other hand, states a case consistent only with the status of the Supreme Lodge as that of trustee for the disbursement of the guaranty fund in accordance with the constitution and laws of the order. As held by the court below, there is no allegation that the guaranty fund contains any or sufficient moneys to pay the claims of the plaintiff, nor is it alleged that the Supreme Lodge or any of its officers misappropriated the moneys of the fund.

We construe the allegation that the Supreme Lodge agreed, through its board, to pay the claims in question as intended to charge merely an assurance or promise that the claims would be paid in due course, and not as creating a contract relation to do any act outside of the performance of the duties imposed upon the Supreme Lodge under its laws, in connection with the due disbursement of the fund. We agree with the Circuit Court that the original petition did not state a cause of action at law.

With respect to the refusal to permit the filing of the proposed amended petition, it is to be noted that at the time the motion therefor was made the demurrer to the original petition had been sustained; that no order has been made dismissing the proposed amended petition, the order in respect thereto being simply a refusal to permit it to be filed. No order has been made expressly adjudicating its insufficiency. It was within the discretion of the trial court, especially after the order

had been made sustaining the demurrer to the original petition, to grant or refuse leave to file an amended petition, and it is the general rule that the granting and refusals of amendments to pleadings are within the discretion of the court, and that this discretion will not be interfered with unless plainly abused.    See Rev. St. § 954 (last clause) (U. S. Comp. St. 1901, p. 696); United States v. Buford, 3 Pet. 10, 12, 7 L. Ed. 585; Smith v. Vaughan, 10 Pet. 366, 9 L. Ed. 457; Jackson v. Ashton, 10 Pet. 480, 9 L. Ed. 502; Chapman v. Barney, 129 U. S., at page 681, 9 Sup. Ct., at page 427, 32 L. Ed. 800, and cases there cited; Stevens v. Nichols, 157 U. S. 370, 15 Sup. Ct. 640, 39 L. Ed. 736, and cases there cited; Union Central Life Ins. Co. v. Phillips (Fifth Circuit) 102 Fed. 19, 23, 41 C. C. A. 263.    Even under equity rule No. 29 complainant is not entitled as of right to amend his bill after demurrer has been sustained.    National Bank v. Carpenter, 101 U. S. 567, 568, 25 L. Ed. 815.

But in view of the fact that the refusal to permit the filing of the proposed amended petition was put upon the ground that the petition failed to state a cause of action at law, we shall consider the important question whether the guaranty provision contained in the charter of the Supreme Lodge amounts to an absolute guaranty of payment of the certificates issued by the Grand Lodge.    It may be conceded that, if the provision in question is an absolute guaranty of payment by the Supreme Lodge of the beneficiary certificates issued by the Grand Lodge, action at law could be maintained by the plaintiff for its violation.    It may also be conceded that the language of the guaranty in question, if unaffected by the circumstances under which it was made, including the provisions of the constitution and laws of the order relating to the subject of the guaranty, would justify a construction of absolute guaranty of payment.    But the elementary rule that contracts are to be construed in the light of the circumstances under which they are made applies to contracts of guaranty (The Cambria Iron Co. v. Keynes, 56 Ohio St. 501, 47 N. E. 548); and in this case we must take into account the constitution and laws of the order, which also evidence the construction given by the organization upon this charter provision.    We are obliged, in this connection, to disregard certain provisions of the charter and laws of the order cited in the brief of defendant, other than those contained in the plaintiff's petition.    We must also leave out of consideration certain other matter of history stated in plaintiff's brief, which is not within the record or the concessions of counsel.    The provisions of the constitution and laws referred to in the plaintiff's petition vest in the board of directors of the Supreme Lodge large discretionary powers with regard to the affording of relief to overburdened jurisdictions, which, in view of the fraternal and representative nature of the association, make the Supreme, Grand, and subordinate lodges practically a single organization (although each has its own individuality and distinctive rights and liabilities—1 Bacon on Benefit Societies, § 74), including the fact that there are many beneficiary jurisdictions entitled to participate in the guaranty fund distribution by the Supreme Lodge, are, in our judgment, inconsistent with a construction of this guaranty provision as an absolute and unconditional guaranty of payment of the beneficiary

certificates issued by each separate beneficiary jurisdiction. The Supreme Lodge is made the trustee of the guaranty fund, and, in our opinion, the charter guaranty in question should be construed as an assurance that the fund will be raised, collected, managed, and disbursed in accordance with the constitution and laws of the order, and that all beneficiary organizations, whether Supreme or Grand, are entitled and will be permitted to participate in the fund to the extent that "may be right, proper and necessary"; in other words, the guaranty is not an absolute and unconditional guaranty of payment in the sense that term is generally used in the law of contracts, but its performance is intended to be had only through the medium of the guaranty fund to be maintained and disbursed by the Supreme Lodge under its constitution and laws. The Supreme Lodge is thus not the debtor of the Grand Lodge, but is its trustee in relation to the guaranty fund and the obligations pertaining thereto, as well as the trustee for all the other beneficiary jurisdictions whose needs, in the judgment of the board of directors of the Supreme Lodge, justify their participation therein.

In determining the extent of the right of the plaintiff Grand Lodge to participate in the guaranty fund, it is therefore necessary for the Supreme Lodge to determine the rights of other parties, to wit, the other beneficiary jurisdictions. It follows that the fact that plaintiff's claims have been approved and ordered paid is not conclusive that they are to be paid in preference to other claims of other parties. The general rule is that a trustee is not suable at law for the enforcement of the trust while it is still open, although, when the trustee is guilty of misfeasance or malfeasance whereby the rights of the beneficiary are lost or impaired, he may thereby become personally subject to suit at law. 2 Perry on Trusts, § 843. We must not be understood as holding that the mere fact that the order in question is a fraternal beneficiary organization, representative in character, and without capital stock, relieves it from liability to action at law. On the contrary, beneficiary organizations of this character are generally suable at law upon their certificates of insurance whenever the elements of an absolute undertaking are present, for example: Where the certificate contains an express covenant to pay a specific sum, or where the contract provides for payment from an accumulated surplus when the proceeds of the association prove insufficient (Warner v. National L. Ass'n, 100 Mich. 157, 58 N. W. 667), or where by statute the policy is required to state the exact amount to be paid (McFarland v. United States Mutual Accident Ass'n, 124 Mo. 204, 27 S. W. 436).

If the plaintiff's construction of the guaranty is the correct one, viz., that the Supreme Lodge is under an absolute obligation to raise sufficient funds to enable it to comply with this guaranty, then no reason is apparent why action at law could not be maintained. But, as already said, such is not, in our opinion, the true construction of the guaranty. It is urged by plaintiff's counsel that the judgment which it seeks to obtain, if rendered, should be paid from the guaranty fund. Conceding that the proposed amendment states a case entitling plaintiff to share in the guaranty fund, that is, in our opinion, the only case made by the petition. That equity has jurisdiction of such a case is

clear. 1 Bacon on Benefit Societies, § 39; Burke v. Roper, 79 Ala. 138; Colley v. Wilson, 86 Mo. App. 396; Blair v. Supreme Council, 208 Pa. 262, 57 Atl. 564, 101 Am. St. Rep. 934.

The proposed petition does not, in our judgment, contain sufficient allegation of misfeasance or malfeasance on the part of the Supreme Lodge as to render it liable at law for failure to collect assessments. The allegations that the Supreme Lodge had power to levy assessments to meet all guaranty fund requirements, and that the assessments fixed each year were at the time they were fixed agreed and understood by the Supreme Lodge to be adequate to realize a sufficient sum to extend the relief provision of the guaranty fund to the several beneficiary jurisdictions entitled thereto, and that accordingly no additional assessments for said fund would be needed and none were in fact made, and that the defendant collected or should have collected from each of the beneficiary jurisdictions for the guaranty fund the amount fixed and determined by it, and had or should have had in its possession the amount due and payable to each of the beneficiary jurisdictions upon all valid claims, do not, in our judgment, charge misappropriation, maladministration, or bad faith on the part of the Supreme Lodge, nor are they inconsistent with an honest exercise of judgment by the Supreme Lodge in an unsuccessful attempt to raise sufficient funds to meet the beneficiary certificates issued by the plaintiff Grand Lodge, in connection with those issued by other jurisdictions.

In our opinion the amended petition fails to state a right of action at law. The case of Commissioners v. Gardiner Savings Inst. (Sixth Circuit) 119 Fed. 36, 55 C. C. A. 614, is not opposed to the conclusion we have reached. In that case the bonds were the absolute obligations of the county, and the holder was properly held entitled to judgment at law thereon, without regard to the question of the means by which such judgment could be enforced.

The conclusion reached makes it unnecessary to consider the defenses of ultra vires and the alleged incapacity of the plaintiff receiver to maintain suit at law.

It follows, from the views we have expressed, that the order of the Circuit Court should be affirmed.